# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**D.R. and M.R.,**
**Respondents Below, Petitioners**

**vs)  No. 16-0302** (Logan County 15-SAP-2-W and 15-SAP-3-W)

**W.B.,**
**Petitioner Below, Respondent**

**FILED**

**June 16, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners and paternal grandparents D.R. and M.R.,[1] by counsel Christopher T. Pritt, appeal the February 23, 2016, order of the Circuit Court of Logan County that affirmed the issuance of a personal safety order that was sought by Respondent W.B., their former daughter-in-law, on behalf of herself and her minor son. Respondent W.B., appearing pro se, filed a summary response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error with respect to the affirmance of the personal safety order to protect respondent and her child from petitioners. However, as more fully explained herein, the Court is of the opinion that the circuit court erred in affirming the issuance of the personal safety order in this matter inasmuch as the circuit court awarded relief to a non-party in the proceedings. Accordingly, this case satisfies the "limited circumstances" requirement of Rule 21(d) and it is appropriate for the Court to issue a memorandum decision rather than an opinion.

This case involves the issuance of a personal safety order, issued pursuant to West Virginia Code §§ 53-8-1 through -17, that was filed by respondent on behalf of her six year old son, to protect her and the child from contact by petitioners. Petitioners are the child's paternal grandparents. Respondent and D.R., Jr. (petitioners' son and the child's father), are divorced and both have remarried. The Family Court of Logan County previously awarded petitioners visitation with the child following the divorce, over the objections of both respondent and

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

petitioners' son. However, upon the motion of respondent and petitioners' son, the family court terminated petitioners' visitation rights by order entered on May 14, 2014. Petitioners appealed the termination of their visitation rights to the circuit court, which refused their appeal by order entered on August 1, 2014.

Respondent filed a petition for a personal safety order against petitioners in the Magistrate Court of Logan County on April 23, 2015. As the grounds for her petition, respondent stated as follows:

> [Petitioner and grandfather D.R.] has come to my son's school trying to have lunch all while enticing him to come to his home.[2] I fear for his safety and well being. [The child] fears for his life and he is scared they are going to take him. He's afraid to go to school. He thinks he will never see me again. The school called and I had to get him. He was broken out really bad from his nerves and from being scared.

The magistrate court issued the personal safety order against petitioners who responded with an appeal with the circuit court, which held a de novo evidentiary hearing on February 5, 2016. The parties appeared pro se. At the hearing, respondent testified, in relevant part, as follows:

> [Respondent]: My son was at school and I had a phone call that I needed to come down to the school. I had gotten down there and he was broke out with a rash[3] and he was in principal's office. And [petitioners] had come down there trying to have lunch with him, well they had already lost their grandparent rights and wasn't supposed –
>
> THE COURT: Where did they lose rights?
>
> [Respondent]: Over in Family Court. And the Judge told them verbally, "Don't go to his school; it's fine if you go to his sporting events, but just don't bother him in school." Well they come down there anyways and so I had to go down there and I had to pick him up from school and he didn't want to go back to school anymore because he was afraid they were going to come down there. So that's why we went in and had the protective order put in because he said when they were there, they kept saying [to the child], "Yeah, I bet you want to come to Mimi and Poppie's house," trying to entice him to want to go to their house. And he just doesn't want to because he's afraid that he wouldn't get to come back. That's what he has told me.

---

[2] Respondent states that her son's school permits parents to have lunch with their child. She states that, on the day that petitioners visited the school, there was no special event that opened the lunch period to the public that would have permitted petitioners to visit him there.

[3] Respondent states that her son has eczema that flares up when he gets upset or nervous.

(Footnote added).

In response, petitioner and grandmother M.R. testified that she recorded the entire visit at the school from the time they parked until they left the school. After cautioning petitioners about making surreptitious recordings, the circuit court attempted to listen to the twelve minute audio recording. Much of the recording was inaudible due to the number of students in the lunchroom. The recording, however, revealed petitioners checking into the school; locating the child in the lunchroom; offering the child chicken nuggets; telling the child that they will come to his ball games; questioning the child as to whether he is mad at them; and telling the child they love him.

Petitioner's son, D.R., Jr., who appeared at the hearing in support of respondent, questioned petitioners as to why they would defy the family court's order prohibiting them from visiting the child at school. Petitioners denied that the family court imposed such a restriction on them. The circuit court received a copy of the May 14, 2014, "Order Terminating Grandparent Visitation" into the record. In that order, the family court notes that the guardian ad litem for the child recommended that Petitioner M.R. not receive any visitation with the child "until such time that she has obtained anger management counseling." The family court found that "the actions of [Petitioner M.R.] in confronting [D.R., Jr.'s,] significant other while she was holding the infant child in her arms, confirms that the parents' objection to grandparent visitation was reasonable and warranted."[4] Furthermore, according to the guardian ad litem's report from the visitation proceeding, which is included in the appendix record in the current matter, respondent advised the guardian ad litem that petitioners "had repeatedly made derogatory comments to [respondent's child] about [respondent and D.R., Jr.]," and that Petitioner M.R. "had interfered with her relationship with her child and had verbally harassed her."

By order entered on February 23, 2016, the circuit court affirmed the issuance of the personal safety order. The circuit court found that petitioners visited the child at school causing him to be upset, and that the best interest of the child required the issuance of the personal safety order. The circuit court ordered as follows:

> [T]he Personal Safety Order is affirmed and the appeal from the Personal Safety Order is overruled; [petitioners] are not allowed to go to the school where the child is being educated except for events where the general public is invited, but the Court is specifically ORDERING that [petitioners] may not visit with said child at public events; [petitioners] [are] ORDERED to not contact or attempt to contact or harass either of the parents of the child indirectly or directly through third parties; [petitioners] are ORDERED to not enter the residence of either of the parents; [petitioners] are ORDERED to not go to the place of employment, school or residence of either of the parents; [petitioners] are ORDERED to not be around the school where the child attends for any reason except for an event to which the general public is invited as previously stated.

---

[4] According to the appendix record, the infant child that was the subject of this incident is the child of D.R., Jr., and his then-girlfriend.

Petitioners now appeal to this Court.

On appeal, petitioners raise the following three assignments of error: (1) the circuit court erred by granting relief to their son, D.R., Jr., who was not a party to the proceedings below; (2) the circuit court erred in affirming the personal safety order because respondent was eligible for domestic violence protective order under West Virginia Code § 48-27-305; and (3) the evidence introduced before the circuit court did not warrant issuance of the personal safety order. We apply the following standard of review in this matter:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

In petitioners' first assignment of error, they argue that the circuit court abused its discretion by restricting their ability to have contact with D.R., Jr., their son, because he was not a party to the proceedings below. Upon our review, we agree with petitioners. West Virginia Code § 53-8-7(b) states that "[a] final personal safety order may be issued only to an individual who has filed a petition or on whose behalf a petition was filed under section three of this article." Pursuant to West Virginia Code § 53-8-3(a), in relevant part, "[a] petition for relief . . . may be filed by: (1) A person seeking relief under this article for herself or himself; or (2) A parent, guardian or custodian on the behalf of a minor child or an incapacitated adult."

In this case, respondent filed the petition on her and her minor son's behalf; D.R., Jr., did not file a petition on his own behalf. Nevertheless, the circuit court ordered that petitioners "not contact or attempt to contact or harass *either of the parents* of the child indirectly or directly through third parties (emphasis added);" that petitioners "not enter the residence of *either of the parents* (emphasis added);" and that petitioners "go to the place of employment, school or residence of *either of the parents* (emphasis added)[.]" We conclude that the circuit court abused its discretion by including D.R., Jr. as a person with whom petitioners could not have any contact. Therefore, the circuit court's order is reversed inasmuch as it grants relief to D.R., Jr., as he was not a party to the proceedings and sought no relief under the statute.

Petitioners' second assignment of error is that respondent was not eligible for relief in the form of a personal safety order because she could have sought a domestic violence protective order pursuant to West Virginia Code § 48-27-305. *See* West Virginia Code § 53-8-3(c), in relevant part ("This article does not apply to a petitioner who is a person eligible for relief under article twenty-seven, chapter forty-eight of this code."). Respondent is divorced from petitioners'

4

son; she and petitioners are no longer family or household members, as required for a domestic violence protective order.[5] Accordingly, we reject petitioners' second assignment of error.

We next examine whether the evidence before the circuit court warranted issuance of a personal safety order to respondent and her son, which is the basis of petitioners' third assignment of error. West Virginia Code § 53-8-7 states, in relevant part, that a court

> [m]ay issue a final personal safety order to protect the petitioner if the court finds by a preponderance of the evidence that:
>
> (A)(i) The respondent has committed an act specified in subsection (a), section four of this article [West Virginia Code § 53-8-4(a)] against the petitioner; and
>
> (ii) The petitioner has a reasonable apprehension of continued unwanted or unwelcome contacts by the respondent[.]

West Virginia Code § 53-8-4(a) requires that a person seeking a personal safety order establish any of the following:

> (1) A sexual offense or attempted sexual offense as defined in section one of this article;
>
> (2) A violation of subsection (a), section nine-a, article two, chapter sixty-one of this code [West Virginia Code § 61-2-9a(a)]; or
>
> (3) repeated credible threats of bodily injury when the person making the threats knows or has reason to know that the threats cause another person to reasonably fear for his or her safety.

West Virginia Code § 61-2-9a(a) provides as follows:

> Any person who repeatedly follows another knowing or having reason to know that the conduct causes the person followed to reasonably fear for his or her safety or suffer significant emotional distress, is guilty of a misdemeanor and, upon conviction thereof, shall be incarcerated in the county or regional jail for not more than six months or fined not more than one thousand dollars, or both.

Without question, there is no allegation of a sexual offense or an attempted sexual offense. Examining the allegations in this case, the question is whether the preponderance of the evidence before the circuit court established either (1) "repeated[] follow[ing] [of] another

---

[5] Respondent states that she explained to the magistrate assistant that she was divorced from D.R. Jr., petitioners' son, and that she wanted something to protect the child from petitioners. Respondent states that the magistrate assistant gave her the personal safety order forms to complete.

knowing or having reason to know that the conduct cause[d] the person followed to reasonably fear for his or her safety or suffer significant emotional distress," or (2) "repeated credible threats of bodily injury when the person making the threats knows or has reason to know that the threats cause another person to reasonably fear for his or her safety." In our analysis, we must take into account the requirement that the conduct of petitioners be "repeated," which means "on two or more occasions." *See* W.Va. Code § 61-2-9a(f)(5).

Upon our careful review and under the limited circumstances in this case, we find that the record in this matter supports the issuance of the personal safety order to protect respondent and her child. The evidence before the circuit court demonstrated that petitioners, without any authorization from respondent, D.R., Jr., or the family court, visited the child at his school during his lunch break. Respondent presented credible evidence that petitioners' visit caused the child stress and anxiety, to the point that his eczema flared up.[6] This incident, coupled with the prior incidents noted in the visitation termination proceeding, prompted respondent to file the petition for a personal safety order in the magistrate court. The record also includes evidence that Petitioner M.R. confronted the D.R., Jr.'s then-girlfriend while she held an infant; that petitioners made derogatory comments to the child about his parents; that Petitioner M.R. interfered with respondent's relationship with her; that Petitioner M.R. had verbally harassed respondent in the past; and that the guardian ad litem recommended that Petitioner M.R. not be permitted to visit the child until she obtained anger management counseling. For these reasons, we find the circuit court did not abuse its discretion in affirming the issuance of the personal safety order sought by respondent on her and her son's behalf.

For the foregoing reasons, we affirm the February 23, 2016, order of the Circuit Court of Logan County affirming the issuance of the personal safety order as the order applies to respondent and her child. However, we reverse the order inasmuch as it includes D.R., Jr., as a party with whom petitioners can have no contact.

Affirmed in part, and reversed in part.

**ISSUED:** June 16, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[6] It is reasonable to conclude that petitioners were aware of the child's condition given that they previously enjoyed visitation with him.